UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

KATHERINE MARIE SHERRIT,

Debtor.

_____/

Case No. 24-42642

Chapter 7

Judge Thomas J. Tucker

KAREN EVANGELISTA, TRUSTEE,

Plaintiff,

vs.

MIKHOLAE HUTCHINSON, *pro se*,

Defendant.

_____/

Adv. No. 24-4390

**OPINION REGARDING THE PENDING MOTIONS FOR SUMMARY JUDGMENT**

This adversary proceeding arises out of the post-petition transfer by the Chapter 7

bankruptcy Debtor, Katherine Marie Sherrit, of her 50% interest in real property located at 27375

Bloomfield Drive, Lathrup Village, Michigan 48076 (the "Property") to the Defendant by a quit

claim deed. That deed was executed by the Debtor and the Defendant on June 10, 2024, and

recorded on June 14, 2024 at the Oakland County Register of Deeds. Prior to the Debtor's

bankruptcy filing, the Property had been owned jointly by the Debtor and the Defendant. This

case is before the Court on the motions for summary judgment filed by the parties, each seeking

summary judgment on the Plaintiff's First Amended Complaint.[1]

The Court has reviewed and considered all of the papers filed by the parties relating to

_____

[1] Docket ## 54, 63. The First Amended Complaint (Docket # 34) is the operative complaint, except that as noted below, two of the three counts in that complaint have already been dismissed.

these motions, including the response to the Plaintiff's motion filed by the Defendant on May 16, 2025.[2]  The Court concludes that a hearing on these motions is not necessary.  For the following reasons, the Court concludes that the Defendant's summary judgment motion should be denied, and that the Plaintiff's summary judgment motion should be granted.

First, to the extent the Defendant's motion seeks summary judgment on Count II of the Plaintiff's First Amended Complaint, the motion is moot, because Counts I and II already were voluntarily dismissed by the Plaintiff, with prejudice, in the stipulated order filed on April 23, 2025.[3]

Second, the Plaintiff is entitled to summary judgment on Count III of the First Amended Complaint, and the Defendant is not.  From the undisputed facts, it is clear that the Defendant violated the automatic stay under 11 U.S.C. § 362(a)(3),[4] because the Defendant caused, and actively participated in, the Debtor Katherine Marie Sherritt's giving the Defendant a quit claim deed on June 10, 2024 to the Property, and in the Defendant's acceptance of delivery of that deed, and in the recording of that deed on June 14, 2024.[5]

This was a violation of the automatic stay because it was a post-petition transfer of property of the bankruptcy estate.  At a minimum, the bankruptcy estate had a legal interest in the

---

[2]  Docket ## 54, 55, 61, 62, 63, 65, 70, and 71.

[3]  *See* "Stipulated Order For Voluntary Dismissal of Count I and Count II of Plaintiff's First Amended Complaint" (Docket # 58).

[4]  Under 11 U.S.C. § 362(a), an automatic stay arose when the Debtor filed her voluntary bankruptcy petition on March 18, 2024.  That automatic stay "operate[d] as a stay, applicable to all entities, of" the following, among other things: "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).

[5]  A copy of this quit claim deed is attached as Exhibit B to the First Amended Complaint and as Exhibit 4 to the Plaintiff's summary judgment brief (Docket # 62-4).

Property, by virtue of the fact that when she filed her bankruptcy petition, the Debtor Katherine Marie Sherritt was a joint owner of record, with the Defendant, under the warranty deed dated June 11, 2021 and recorded July 9, 2021.[6]  *See* 11 U.S.C. §§ 541(a)(1), 541(d).  The Plaintiff contends that the bankruptcy estate had not only such *legal* interest in the Property, but also that the bankruptcy estate had a one-half *equitable* interest in the Property as well.  The Defendant disputes that the estate had any *equitable* interest, but there can be no genuine dispute that the bankruptcy estate had at least a one-half *legal* interest in the Property beginning when Katherine Sherritt filed her bankruptcy petition.[7]  The Defendant's actions in obtaining and recording the quit claim deed, which transferred the Property to the Defendant only, was an act "to exercise control over property of the [bankruptcy] estate" that was prohibited by the automatic stay under 11 U.S.C. § 362(a)(3).

The Defendant argues that the automatic stay terminated on May 1, 2024, when the Court entered an order denying the Debtor a discharge in her bankruptcy case.[8]  The Defendant cites 11 U.S.C. § 362(c)(2)(C) in support of this argument.  But this argument is incorrect.  The denial of the Debtor's discharge did not terminate the automatic stay with respect to acts against property of the bankruptcy estate; rather, that stay continued in effect.  As 11 U.S.C. § 362(c)(1) states, with certain exceptions not applicable here, "the stay of an act against property of the estate

---

[6]  A copy of this warranty deed is attached as Exhibit A to the First Amended Complaint and as Exhibit 1 to the Plaintiff's summary judgment brief (Docket # 62-1).

[7]  Because of this legal interest, it is not necessary for the Court to decide whether the bankruptcy estate also had an equitable interest in the Property, in order for the Court to find that the Defendant violated the automatic stay.

[8]  *See* "Order Denying Discharge of Debtor Under 11 U.S.C. § 727" (Docket # 22 in Case No. 24-42642).

3

under subsection (a) of this section continues until such property is no longer property of the estate[.]"  Section 362(c)(2)(C), in turn, only says that the denial of discharge terminates "the stay of any other act" — that is, any act *other than* an act against property of the bankruptcy estate.

Not only were the Defendant's actions a violation of the automatic stay, but also they were a "willful" violation of the automatic stay, within the meaning of 11 U.S.C. § 362(k)(1).[9] This is because the Defendant's actions were done after the Defendant had actual knowledge of the Debtor's pending bankruptcy case.  It is not a valid defense for the Defendant to say that he did not intend to violate the automatic stay, or that he did not realize that he was violating the stay, or that he acted in good faith.  Nor is it a defense for the Defendant to say that he had a right to take the actions he did because of some alleged "pre-existing, legally enforceable agreement." As this Court has explained in prior published opinions,

> **A violation of the automatic stay is willful "if the creditor deliberately carried out the prohibited act with knowledge of the debtor's bankruptcy case.**" *In re Printup*, 264 B.R. 169, 173 (Bankr. E.D.Tenn.2001) (internal quotation marks and citation omitted). The test for a willful violation of the automatic stay can be summarized in this way:
>
> > **A specific intent to violate the stay is not required, or even an awareness by the creditor that [its] conduct violates the stay. It is sufficient that the creditor knows**

---

[9]  Section 362(k)(1) states, in pertinent part, that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  11 U.S.C. § 362(k)(1).

> > **of the bankruptcy and engages in
> > deliberate conduct that, it so
> > happens, is a violation of the stay.**
> > Moreover, where there is actual
> > notice of the bankruptcy it must be
> > presumed that the violation was
> > deliberate or intentional. Satisfying
> > these requirements itself creates
> > strict liability. There is nothing more
> > to prove except damages.
>
> > *In re Daniels*, 206 B.R. 444, 445 (Bankr.
> > E.D.Mich.1997) (internal quotation marks and
> > citation omitted); *see also In re Webb*, 472 B.R.
> > 665, 2012 WL 2329051 at *15 (6th Cir. BAP 2012)
> > (unpublished opinion).
>
> > *Bankers Healthcare Grp., Inc. v. Bilfield* (*In re Bilfield*), 494 B.R.
> > 292, 301 (Bankr. N.D. Ohio 2013).
>
> *In re Bello*, 612 B.R. 389, 395 (Bankr. E.D. Mich. 2020) (bold added).

The Plaintiff's summary judgment motion seeks a monetary judgment against the

Defendant for the Defendant's willful stay violations, under 11 U.S.C. § 362(k)(1), or

alternatively, under 11 U.S.C. § 105(a). As this Court has previously held, a Chapter 7 trustee is

not eligible to obtain monetary relief under § 362(k)(1), because the trustee is not an "individual"

within the meaning of that section. But a Chapter 7 trustee may obtain the equivalent monetary

relief under § 105(a).[10] *See Vining v. Comerica Bank* (*In re M.T.G., Inc.*), 646 B.R. 1, 173-75

(Bankr. E.D. Mich. 2022), *aff'd.*, No. 2:22-CV-12661 (E.D. Mich. Sept. 30, 2024). For this

reason, the Defendant is incorrect in arguing that the Plaintiff Trustee lacks standing to seek the

---

[10] Section 105(a) permits the bankruptcy court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a).

5

monetary relief she seeks for the Defendant's violation of the automatic stay.[11]

The Court concludes, in its discretion under 11 U.S.C. § 105(a), that the Plaintiff Trustee should be compensated by the Defendant for the reasonable attorney fees and expenses incurred because of the Defendant's violation of the automatic stay. In the Court's view, such relief is both "necessary" and "appropriate" to carry out the automatic stay provisions of Bankruptcy Code § 362(a). *See* 11 U.S.C. § 105(a).

Based on paragraph 11 of the Plaintiff Trustee's Declaration,[12] and the fee and cost itemization filed with the Plaintiff's motion,[13] the Court finds that the reasonable attorney fees and expenses incurred because of the Defendant's violation of the automatic stay equal $1,512.00 in fees and $358.61 in expenses.[14]

The Plaintiff's fee itemization shows attorney fees totaling $7,974.00, but the Plaintiff seeks attorney fees only in the lower amount of $4,500.00. These fee amounts are too high. They include fees for the work of the Plaintiff's attorney from the day before the filing of this adversary proceeding, October 3, 2024, through March 6, 2025. But the filing of the First Amended Complaint on February 14, 2025 was the first time the Plaintiff asserted the automatic stay violation claim, in Count III. All the time entries prior to February 14, 2025 were for work on other claims, which were in Counts I and II of both the original complaint and the First

---

[11] The Defendant's other arguments in opposing the Plaintiff's summary judgment motion, including the arguments that the Plaintiff's claim is barred by *res judicata* and collateral estoppel, also are incorrect.

[12] Exhibit 10 to the Plaintiff's summary judgment brief (Docket # 62-10).

[13] Exhibit 11 to the Plaintiff's summary judgment brief (Docket # 62-11).

[14] The $358.61 in expenses is the $350.00 filing fee the Plaintiff incurred to file this adversary proceeding plus the $8.61 in other expenses in the Plaintiff's itemization.

6

Amended Complaint. Those claims were voluntarily dismissed with prejudice, by stipulation. The Plaintiff's fee itemization shows attorney fees for work done, on the Plaintiff's claim for violation of the automatic stay, on February 14, 2025, March 5, 2025, and March 6, 2025, that total $1,512.00.[15] The Court finds that the work done, time spent, and attorney hourly rate for the work done on those days all is reasonable. The Plaintiff's attorney obviously did additional work on this case after March 6, 2025, but the Plaintiff's fee itemization does not include any time entries for such work. So the Court will limit the attorney fees to be awarded against the Defendant to $1,512.00.

For the reasons stated above, the Court will enter a separate order granting the Plaintiff's motion for summary judgment and denying the Defendant's motion for summary judgment.[16]

**Signed on May 19, 2025**



/s/ **Thomas J. Tucker**
_____
**Thomas J. Tucker**
**United States Bankruptcy Judge**

---

[15] 4.2 hours at $360.00 per hour, equals $1,512.00.

[16] The Court also will deny the Defendant's motion, filed May 16, 2025, entitled "Defendant's Emergency Motion to Strike Plaintiff's Certificate of No Response (Dkt. #69)" (Docket # 71). That motion is moot, because the Court has considered the merits of the Defendant's untimely response to the Plaintiff's summary judgment motion, filed May 16, 2025 (Docket # 70), and the Court has decided the summary judgment motions on their merits, rather than by ruling against the Defendant by default.

7